IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JESSICA VILLALPANDO, | § | |
| | § | |
| v. | § | NO. A-07-CA-109 AWA |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Brief (Clerk's Doc. No. 16); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 21); and the Social Security Record filed in this case (Cited as "Tr."). Both parties have consented to have the Court adjudicate the claims. Plaintiff presents three issues for review: whether the ALJ's decision (1) failed to give proper weight to the medical opinion of the treating doctor; (2) failed to properly assess Plaintiff's residual functional capacity; and (3) failed to properly assess Plaintiff's credibility.

**I. BACKGROUND**

Plaintiff is a 32 year-old woman with a high school level education. Before dropping out of the work force and applying for disability benefits, Plaintiff worked as a daycare worker, sales clerk, material handler, telephone operator, and cashier at a gas station. In 2004, Plaintiff filed for benefits commencing in 2003, claiming fibromyalgia, lumbar disc disease, depression, seizures, migraine headaches, and chronic pain.

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work which involved detailed, but not complex tasks, which could not be performed around hazardous machinery or involve climbing ladders, ropes, or scaffolds. The ALJ also found that

Plaintiff could perform her past relevant work as a daycare worker, sales clerk, telephone operator, and cashier-checker. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's Request for Review on December 8, 2006. Plaintiff now appeals that final decision.

## II.  ANALYSIS

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity.[1] Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

**A. The ALJ's Consideration of the Opinions of Plaintiff's Treating Physicians**

Plaintiff begins by arguing that the ALJ did not give proper consideration to the opinions of her treating physicians. The opinion of the treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

"Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Therefore, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id.* Moreover, the treating physician's opinions are not conclusive and their opinions may be assigned little or no weight when good cause is shown. *Id*. at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Section 404.1527(d)(2) requires consideration of:

(1) the physician's length of treatment of the claimant,

(2) the physician's frequency of examination,

(3) the nature and extent of the treatment relationship,

(4) the support of the physician's opinion afforded by the medical evidence of record,

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

In support of her argument, Plaintiff points to various statements of Dr. Alex DeJesus (which have been transcribed to six single-spaced type written pages of Plaintiff's brief), to statements in Plaintiff's MHMR treatment notes, and to the statements of two consulting physicians, Dr. Robison and Dr. Shannon.

### 1.     The ALJ's Consideration of Dr. DeJesus' Opinions

The Court first addresses the ALJ's treatment of Dr. DeJesus' opinion. In her brief, Plaintiff has underlined the portions of this treating physician's statements that she contends are inconsistent with the findings of the ALJ. The Commissioner correctly points out that the majority of these statements refer to Plaintiff's condition for a time period outside Plaintiff's alleged onset date of November 3, 2003.[2] The Court agrees that all statements prior to November 3, 2003, are irrelevant as Plaintiff does not claim she was disabled at that time. Additionally, as the Commissioner also rightly points out, most of the statements Plaintiff relies upon for the period before and after her onset date are simply notes of Plaintiffs' subjective reports of her symptoms to her doctors and are

---

[2] The Record reflects that Plaintiff was employed full-time at a Lowes hardware store until September of 2003. Tr. 65, 200, 336-337.

not Dr. DeJesus' opinions or conclusions.  Thus the Court discounts these statements as they do not qualify as "opinions."

Moreover, as noted and considered by the ALJ, Dr. DeJesus' reports occurring after Plaintiff's onset date consistently report objective medical findings that do not support a finding of disability.  Over a course of several visits occurring approximately every three months from September 2003 to September 2005, Dr. DeJesus noted only mild to moderate discomfort in Plaintiff's neck, shoulders, arms, forearms, and thighs, care was conservative, and visits were scheduled months apart.  Tr. 243, 244, 254, 253, 252, 251.  On these visits, he also noted no obvious swelling or decreased joint mobility, and generally normal muscle strength and tone.  Tr. 242, 249, 250, 254.  Thus, as recognized by the ALJ, Dr. DeJesus' objective medical findings do not support a finding of disability.

However, as the ALJ also noted, Dr. DeJesus stated in his final progress notes "chronic disability from job activities."  Tr. 240.  The ALJ determined that this conclusion is inconsistent with treatment records through 2004 showing Plaintiff was able to perform a wide range of daily activities without limitation.  The ALJ considered the Plaintiff's reports to her doctor of significantly increased functional limitations during her 2005 follow-up appointment, but found that the objective evidence did not support this degree of limitation.  Tr. 20.  The ALJ found that Dr. DeJesus' physical examinations reflected moderate symptomology, most of which resolved at the time of his November 2005 examination of Plaintiff.  In deciding not to assign controlling weight to Dr. DeJesus' opinion that Plaintiff was unable to work, the ALJ also noted that Plaintiff showed significantly more independence during her February 5, 2005, mental status evaluation, the Plaintiff's limited pursuit of medical care during the nine months prior to the hearing, and the fact that her overall physical

health remained stable in 2005. Circuit law permits the Commissioner to reject treating source opinions for good cause. Good cause may exist when – as here – the treating source's opinion is unsupported by his own clinic notes. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Thus, the ALJ properly considered Dr. DeJesus' opinion as required by the relevant regulations.

Moreover, the Court notes that the opinion that Plaintiff was unable to work is reserved to the Commissioner, and thus a physician's opinion on this issue need not be considered by the ALJ or the Court. *See* 20 C.F.R. § 404.1527(e) (explaining that a physician's opinion that a claimant is "disabled" or "unable to work" is not a medical opinion and that this opinion is reserved exclusively to the Commissioner). In addition, Dr. DeJesus' opinion was conclusory, in that he neither specifically explained how Plaintiff's impairments impacted on her ability to work nor provided objective medical evidence to support this finding. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.") A treating physician's opinion is entitled to controlling weight only to the extent that it is consistent with medically acceptable clinical or laboratory diagnostic data. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); 20 C.F.R. § 404.1527(d)(2); *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). Therefore, since there was no supporting clinical data, substantial evidence supports the ALJ's evaluation of Dr. DeJesus' opinion.

Plaintiff argues that the ALJ may not "pick and choose" evidence that supports a denial of benefits. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984). This Court has reviewed the record and the ALJ's Review and finds that, as required, the ALJ thoroughly considered all the relevant medical evidence in the record. Upon review of the record, the Court finds that the evidence that

the Plaintiff asserts that the ALJ "ignored" is her own recitation of her medical history contained in her physicians' reports. It is often impracticable and fruitless for every document to be discussed separately; however, in this case, the Court finds that the ALJ did not ignore any medically supported evidence of disability. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). The ALJ's written decision should contain, and his ultimate determination must be based upon, as in this case, all of the relevant evidence in the record. *Id.* The Court finds that the ALJ's decision was based upon all relevant evidence.

Lastly, the Fifth Circuit has held that an ALJ need only perform a detailed analysis of the treating physician's views if there is no "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000). In this case, no such controverting evidence was necessary as the treating physician's findings did not support Plaintiff's claims of disability, but nonetheless, the ALJ did in fact address the 20 C.F.R. § 404.1527(d)(2) factors. Thus the ALJ's consideration of Dr. DeJesus' opinion was correct and supported by substantial evidence in the record.

### 2. The ALJ's Consideration of the "Opinions" of Plaintiff's Non-Treating Doctors

Moreover, the record shows that the ALJ gave proper consideration to the statements made by other doctors who examined Plaintiff, and statements in her MHMR records. On April 15, 2004, Plaintiff was examined by Dr. George R. Robison, a consulting physician retained by a state agency. Tr. 176-178. Dr. Robison found that Plaintiff has a "history of diffuse pain and fatigue consistent with fibromyalgia. Her activity is limited by pain, with no abnormal physical findings other than tenderness." He also found that "all joints show a full range of motion without warmth, tenderness,

effusion, or erythema." Tr. 178. On May 18, 2004, Plaintiff was examined by Kelly Shannon, Ph.D., a psychologist with Quality Care Medical Group. Tr. 179. Plaintiff presented to Dr. Shannon claiming depression. Plaintiff informed Dr. Shannon that she had good results with Zoloft, but she discontinued taking that medication when her insurance ran out. Dr. Shannon determined that Plaintiff does not generally require assistance in performing activities of daily living and that she exhibited a GAF of 60. Tr. 180. Finally, on February 14, 2005, Plaintiff's MHMR records reflect a GAF of 35 and depression.

A medical professional who Plaintiff saw once is not a "treating" or "examining" doctor according to the regulations, but a "nontreating source" according to the Code of Federal Regulations. 20 C.F.R. § 404.1502. Therefore, these opinions need not be given controlling weight, *Bauter v. Barnhart*, 94 Fed. App'x 419, 420 (8th Cir. 2004). The Court finds that the ALJ properly considered the evidence in the record of the non-treating sources in making his determination. Specifically, at Tr. 19, he addresses the GAF of 35 and bases his determination on progress notes stating that Plaintiff's symptoms stabilized with the addition of Zoloft to her medication regime. As the ALJ discusses, Dr. Shannon and Dr. Robison's findings in no way support a finding of disability; although Plaintiff again tries to rely upon her own recitation of her medical history to these doctors as evidence of disability. The ALJ considers and discusses both of these examinations at length and considered the opinions in their entirety. Plaintiff's argument that the ALJ failed to properly consider this evidence is without merit.

    **B.**  **The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ failed to properly consider Plaintiffs' fatigue, stiffness, sensitivity to cold, morning stiffness, anger, and inability to get along with co-workers in

determining her residual functional capacity. Plaintiff argues that the ALJ failed to provide appropriate rationale with specific references to evidence of record in support of the assessed limitations in violation of 20 C.F.R. 416.945 and SSRs 85-16 and 96-8p. *See* Plaintiff's Brief at p. 10. Plaintiff also argues that the ALJ's determination does not conform with SSR 00-4p.

The ALJ asked the Vocational Expert what positions could be performed by an individual of Plaintiff's age, experience, and education, who was restricted to light work, who could understand detailed but not complex instructions, and requiring seizure precautions of not working around hazardous machinery, heights, ladders, ropes, or scaffolds. Tr. 352. The Vocational Expert testified that Plaintiff could perform her past relevant work as a daycare worker, telephone operator, and cashier. Tr. 21. Based on this testimony, the ALJ determined that Plaintiff retained the residual functional capacity to perform her past relevant work

The Court finds that the ALJ properly considered all of Plaintiff's credible impairments in determining her residual functional capacity. First, the Court finds that the ALJ did factor in Plaintiff's fatigue and stiffness in formulating her questions to the Vocational Expert. Both were based upon a hypothetical of a worker who could work only six hours in an eight hour day.

Also, considering the record as a whole, the ALJ determined that many of Plaintiff's complaints were not credible. With regard to Plaintiff's complaints of fatigue and stiffness, Dr. DeJesus reported that Plaintiff suffered only mild to moderate stiffness upon examination. Tr. 240-254. Dr. DeJesus also reported that Plaintiff's morning stiffness lasted less than one hour. Tr. 240. Upon examination, the VE testified that the positions he cited would not regularly expose Plaintiff to cold. The medical reports cited by the ALJ also show that Plaintiff's depression and migraines had been responsive to medication and that her seizure activity had ceased since September of 2003.

Tr. 231.  *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (condition controlled by medication cannot serve as basis for finding of disability).  Thus, they need not have ben considered by the ALJ in formulating a hypothetical.

With regard to Plaintiff's alleged anger and inability to get along with coworkers, the record reflects that Plaintiff was terminated from one position because of an argument with a co-worker but shows no other medical evidence of any anger-related psychosis.  As stated previously, the ALJ properly considered all evidence of Plaintiff's depression.  Thus the Court finds that the ALJ properly considered all of Plaintiff's impairments.

Plaintiff also asserts that the ALJ failed to discharge her duty under Social Security Ruling (SSR) 00-4p to ask the vocational expert whether there were any conflicts between his testimony and the Dictionary of Occupational Titles (DOT).  The hearing testimony shows that the ALJ did not question the expert about any potential conflicts.  Plaintiff argued that the ALJ's failure to inquire about conflicts is error.  The SSR relied on by the Plaintiff provides in relevant part as follows:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:
>
> > Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*See* Policy Interpretation Ruling SSR 00-4p: Titles II and XVI: Use Of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, *4 (December 4, 2000).  Nevertheless, the record does not support

11

any contention that this is reversible error because Plaintiff has not established how she was prejudiced by the ALJ's failure to directly question the expert on this point. In other words, Plaintiff failed to explain how the ALJ's adherence to the rule might have led to a different decision. *DeLeon v. Barnhart*, 174 Fed.Appx. 201 (5th Cir. 2006) (where claimant alleged that the ALJ failed to discover and address conflicts between the testimony of the expert and DOT, claimant not entitled to relief unless she can establish that she has been prejudiced by alleged error), *citing Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Jasso v. Barnhart*, 102 Fed.Appx. 877 (5th Cir. 2004). Moreover, the Plaintiff's attorney did not inquire into any potential conflicts during his questioning of the expert at the administrative hearing. Nor did Plaintiff argue or even suggest that there is any apparent, actual or implied conflict between the expert's opinion testimony in this case and the DOT. Along with Plaintiff's claim that the ALJ did not consider all the evidence, Plaintiff's claim that the ALJ erred because the ALJ's action was inconsistent with SSR 00-4p is without merit.

      **C.**     **The ALJ's Assessment of Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate the credibility of her testimony regarding her physical limitations and other subjective symptoms, as is required by 20 C.F.R. § 404.1529. The ALJ found Plaintiff's allegations regarding her physical limitations to be not credible. Tr. 21.

The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In accordance with the requirements of the above Social Security rulings and regulations, in determining the credibility of Plaintiff's subjective complaints of pain and other symptoms, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about hers symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the vocational expert

Plaintiff alleges that the ALJ failed to address the location, duration, frequency, and intensity of Plaintiff's symptoms and factors that aggravate the symptoms, Plaintiff's medications, and other treatments. The record reflects that the ALJ specifically addressed the intensity of Plaintiff's symptoms, noting that no doctor reported more than "moderate" symptoms of pain. Additionally, the ALJ specifically notes that Plaintiff has been medicated with Soma and a Duragesic patch since 2002, that Plaintiff reported fatigue, drowsiness, and loss of balance from her medication regime, and that exertion and changes in the weather increase her pain. Tr. 17-18. Thus, Plaintiff's claim that the ALJ failed to consider these factors is without merit. Additionally, the ALJ is not obligated

to analyze a factor which has no evidentiary basis. *See Nall v. Barnhart*, No. 03-10222, 2003 WL 22455405, at * *1 (5th Cir.(Tex.) Oct. 29, 2003); *see also Onishea v. Barnhart*, No. 03-21028, 2004 WL 1588294, at *1 (5th Cir.(Tex.) July 16, 2004). Plaintiff fails to point out evidence in the record of "other treatments" which would bear on the ALJ's decision, especially in light of the fact that the ALJ considered all of Plaintiff's treatments.

      The ALJ determined that the medical evidence in the record did not support Plaintiff's complaints of pain and fatigue. The ALJ cited to the Plaintiff's self-reported ability to watch her 5 year old during the day while her other children are at school; the fact that Plaintiff first reported her back/leg pain in 2002, after which she worked 4 ten hour days a week; the fact that Plaintiff's medical records showed little change in her functional abilities after the onset date; the fact that Plaintiff's depressive symptoms improved in 2002 and 2003; and that the doctor she saw the most reported her depression had resolved by April 2004. Tr. 17-18. The ALJ also determined that even after Plaintiff lost her job in 2003, allegedly because of inability to perform sustained activity, Plaintiff acknowledged that she could still carry out the activities of daily living unassisted. The ALJ noted that although Plaintiff reported her symptoms had increased to a moderate level in 2004 and 2005, her treatment regime continued unchanged. Tr. 18.

      Additionally, the ALJ noted that the objective medical evidence and physical examinations did not support Plaintiff's reports of pain and other symptoms at her hearing. The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify the ALJ's conclusion." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). The ALJ also pointed out that in February of 2005, despite claims of significantly increased

symptoms, Plaintiff reported she was able to care for her children and drive to appointments, which she had previously denied performing during her 2005 consultative examination. Lastly, the ALJ noted that despite her claims of depression, Plaintiff had failed to pursue mental health care during the prior year. Giving Plaintiff the benefit of the doubt regarding her functional limitations, the ALJ determined that Plaintiff could perform light work.

"It must be remembered that "[t]he evaluation of a claimant's subjective symptoms is a task particularly with person seems to be disabled.'" *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)). The Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain and other symptoms was based on the proper legal standards and supported by substantial evidence in te record.

## VII.  CONCLUSION

The Magistrate Court **AFFIRMS** the final decision of the Commissioner and **ENTERS JUDGMENT** in favor of the Defendant.

SIGNED this 11th day of February, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE